*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBRA HUSS,

        Plaintiff-Appellant,

v

ALBERT CHEVROLET, INC., doing business as
RANDY WISE CHEVROLET,

        Defendant-Appellee.

UNPUBLISHED
December 09, 2024
3:38 PM

No. 368428
Genesee Circuit Court
LC No. 22-117685-NO

Before: YATES, P.J., and CAVANAGH and MARIANI, JJ.

PER CURIAM.

Plaintiff, Debra Huss, fell while she was walking from a reception area to the service area at defendant's automobile dealership when she tripped on a 4-inch step, and she subsequently filed this action. The trial court awarded summary disposition to defendant under MCR 2.116(C)(10), concluding that the step was not "in unreasonably dangerous condition," that defendant had taken precautions to protect customers from the step, that the step was not an unreasonable risk, and that plaintiff had a duty to inspect the step. Because the trial court erred in its analysis and in deciding that summary disposition was appropriate, we reverse the order of the trial court granting summary disposition to defendant under MCR 2.116(C)(10), and we remand the case for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

When plaintiff arrived at defendant's dealership for an oil change, the garage doors to the service area were closed, so she parked her vehicle and then walked inside through the side door. A handrail was located immediately to her left. On the other side of the handrail was a garage bay where cars pulled in through the garage door. A wall was located immediately to plaintiff's right. The floor was gray with a coating or finish on it, and overhead lights brightly illuminated the space. Plaintiff noticed a yellow line on the floor. She approached the service desk, spoke with a man at the desk, and handed her car keys to the man, who told her that she could wait in the waiting room and pointed in the direction of that room.

-1-

Plaintiff turned to her left to walk to the waiting room. She fell when she stepped off the step and onto the floor of the service area. Before she fell, plaintiff saw the same yellow line that she had noticed when she walked in the door, but she did not realize that the line marked the edge of the floor before it dropped a "[c]ouple inches" to the service-area floor. Nothing indicated that the yellow line signified a step, and the flooring of the reception area and service area was identical. As she sat on the service-area floor after she fell, she noticed that the side of the step had also been painted yellow, but she could not see the side of the step from the reception area or entryway. She suffered shoulder injuries as well as bruising to her knees and ribs. After plaintiff fell, employees told her that other people had fallen in the very same place for the same reason.

Plaintiff filed a premises-liability claim against defendant. Defendant moved for summary disposition under MCR 2.116(C)(10), arguing that the step was not a dangerous condition because a step constitutes a common, everyday occurrence and, despite the step's open and obvious nature, defendant took reasonable measures to protect its invitees from injury by painting the step bright, safety yellow. Defendant further asserted that even if the trial court determined that a question of fact existed as to whether it breached its duty to plaintiff, it was still entitled to summary disposition with respect to noneconomic damages because plaintiff was more than 50 percent at fault.

Plaintiff opposed defendant's motion, arguing that the step was both defective and not open and obvious because the flooring surfaces were a uniform gray concrete without any warning about a change in elevation. Plaintiff relied on her expert's opinion that the uniform gray floor color and yellow floor markings, used to identify aisleways and traffic lanes, created an optical illusion that concealed the slight change in elevation, which should have been indicated with signage. Plaintiff also presented her own deposition testimony, in which she explained that she saw the yellow line, but believed it was a "traffic guide," and not indicative of a drop-off. In addition, plaintiff argued that the trier of fact should decide comparative fault. Further, she maintained that defendant was liable under a theory of general negligence because its employee directed her to the waiting room without warning her of the hidden step. Rejecting plaintiff's arguments, the trial court awarded summary disposition to defendant under MCR 2.116(C)(10). This appeal followed.

II. LEGAL ANALYSIS

Plaintiff insists that the trial court erred when it awarded summary disposition to defendant because the condition of the step was unreasonably dangerous and there existed a question of fact whether the danger was open and obvious. Plaintiff also asserts that comparative fault is an issue that must be left to the jury. Additionally, she argues that defendant unreasonably endangered her by directing her to go over the step. We will address these issues in turn.

We review de novo a trial court's decision on a motion for summary disposition. *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016). A motion under MCR 2.116(C)(10) tests the factual support of the plaintiff's complaint. *Encompass Healthcare, PLLC v Citizens Ins Co*, 344 Mich App 248, 255; 998 NW2d 751 (2022). In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, affidavits, depositions, and other evidence in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The opposing party may not rest upon mere allegations or denials, but rather, must provide documentary evidence setting forth specific facts that establish a genuine

issue for trial. *Id.* Summary disposition is appropriate if the opposing party fails to do so and the moving party is entitled to judgment as a matter of law. *Shinn*, 314 Mich App at 768.

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F&E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). "The first element, duty, is essentially a question whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* (quotation marks and citation omitted). "The question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides." *Id.* at 112. "Duty is a threshold question of law for the court to decide before a case can get to a jury." *Id.* at 133. "In the context of premises liability, a landowner's duty to a visitor depends on that visitor's status." *Id.* at 111 (quotation marks and citation omitted). One such status is that of an "invitee," which is defined as "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make it safe for the invitee's reception." *Id.* (quotation marks, citation, and alteration omitted). "[I]nvitee status is commonly afforded to persons entering upon the property of another for business purposes." *Id.* (quotation marks and citation omitted). Invitees are entitled to the highest level of protection under premises law, and land owners have a duty "to exercise reasonable care to protect invitees from an unreasonable risk of harm caused by a dangerous condition of the land." *Id.* at 112, 143.

If a plaintiff "establishes that the land possessor owed plaintiff a duty, the next step in the inquiry is whether there was a breach of that duty." *Id.* at 148. The issue of "breach—whether defendants' conduct in the particular case is below the general standard of care—is a question of fact for the jury." *Id.* at 112 (quotation marks and citation omitted). And whether a "tortfeasor's action violated that general standard of care is, in essence, a determination of the specific duty under the facts of the given case." *Blackwell v Franchi*, 327 Mich App 354, 358; 933 NW2d 762 (2019). This Court further explained that "when determining whether a defendant violated the general standard of care, the jury must determine what a defendant need do (or not do) to meet that general standard under the specific facts before it[.]" *Id.* "Ordinarily, it is for the jury to determine whether a defendant's conduct fell before the general standard of care. Stated another way, the jury usually decides the specific standard of care that should have been exercised by a defendant in a given case." *Id.* (quotation marks and citation omitted). Indeed, in *Blackwell*, this Court rejected the invitation to render a judicial determination on the standard of care applicable to a "nonvisible change in floor level." *Id.* at 360-361.

If no genuine issue of material fact exists as to whether a duty was breached, the trial court may grant summary disposition under MCR 2.116(C)(10). *Id.* at 148 n 28. A claim that the invitor "has breached the duty to exercise reasonable care to protect invitees from unreasonable risks of harm has traditionally been premised on three theories: failure to warn, negligent maintenance, or defective physical structure." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 610; 537 NW2d 185 (1995). "As part of the breach inquiry, the fact-finder may consider, among other things, whether the condition was open and obvious and whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee." *Kandil-Elsayed*, 512 Mich at 148. *Kandil-Elsayed* overruled previous decisions in which the open and obvious danger doctrine was analyzed as part of the land possessor's duty. *Id.* at 133. Instead, the *Kandil-Elsayed* Court concluded that "the open and obvious nature of a danger—i.e., whether it is reasonable to expect that an average

-3-

person with ordinary intelligence would have discovered it upon casual inspection—is relevant to the defendant's breach and the plaintiff's comparative fault." *Id*. at 144. "The fact that a dangerous condition is open and obvious bears on the assessment of whether reasonable care was employed, but it does not pretermit the land possessor's liability." *Id*. at 146, quoting 2 Restatement Torts, 3d, § 51, p 251.

*Kandil-Elsayed* reaffirmed the doctrine that whether a danger is open and obvious depends on "whether it is reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Id*. at 150, quoting *Hoffner v Lanctoe*, 492 Mich 450, 461; 821 NW2d 88 (2012). That test "is designed to be an objective standard that looks only to the objective nature of the condition of the premises at issue." *Kandil-Elsayed*, 512 Mich at 134. But "[l]andowners are not insurers, and . . . both the possessors of land and those who come onto it must exercise common sense and prudent judgment when confronting hazards on the land." *Id*. at 147. Considering an open and obvious danger in the analysis of breach "will allow the jury to do just what [our Supreme Court]—and the Legislature—intended: conduct a comparative analysis of each party's fault." *Id*. "If breach is shown, as well as causation and harm, then the jury should consider the plaintiff's comparative fault and reduce the plaintiff's damages accordingly." *Id*. at 149. "A determination of the plaintiff's comparative fault may also require consideration of the open and obvious nature of the hazard and the plaintiff's choice to confront it." *Id*.

We must begin by addressing whether defendant owed a duty to plaintiff. As our Supreme Court explained in *Kandil-Elsayed*, the question of duty revolves around the relationship between the land possessor and the visitor. *Id*. at 110, 111. Here, because plaintiff unquestionably was an invitee, defendant owed plaintiff "a duty to exercise reasonable care to protect [plaintiff] from an unreasonable risk of harm caused by a dangerous condition on the land." *Id*. at 112. The specific standard of care in this case as well as the steps defendant needed to take to adhere to that standard of care constitute questions for the jury as part of its consideration of breach. See *Blackwell*, 327 Mich App at 358, 359-360.

Because defendant owed plaintiff a duty, we must next assess whether defendant breached that duty. *Kandil-Elsayed*, 512 Mich at 148. That analysis requires consideration of whether the condition was open and obvious and whether, despite that open and obvious nature, the possessor of land should have anticipated injury to the invitee. *Id*. In the trial court, the parties presented competing evidence of the condition of the step, including evidence of measures that defendant had taken to protect invitees who encountered the step.

Plaintiff offered a letter from an expert, who stated that, from eye level, the floor appeared to be one level plane.[1] Plaintiff's expert further stated that the yellow lines are "primarily used for

---

[1] Defendant argues that the expert's letter is inadmissible and should not be considered. That letter is basically consistent with plaintiff's testimony about the visibility of the step and what someone might interpret the yellow line to indicate. As a result, excluding consideration of the letter would not change this Court's analysis. Additionally, we note that defendant incorrectly argues that the expert's letter improperly tried to define the scope of defendant's duty, which defendant contends

marking aisleways and traffic lanes in the work environment." Plaintiff presented photographs of the area showing the step from both the top and the bottom. The photograph from the bottom of the step reveals that the step is clearly visible from that angle. But in the photograph taken from the top side of the step, the drop-off is not readily apparent even though the yellow line is clearly visible. As plaintiff explained in her testimony—and as her expert echoed—although she saw the yellow line, she did not interpret it as indicating a drop-off. Plaintiff also testified that people who helped her up after she fell all said that several other people had also fallen there.[2] Additionally, plaintiff testified that the room was brightly lit.

Defendant presented a photograph as well, but the quality is low and it appears that the photo was taken from below the step. Therefore, that photograph is of little, if any, probative value when evaluating the visibility of the step from the top side. Defendant also noted the deposition testimony of one of its employees that "[w]hen you're standing there in person, you can clearly see the difference of elevation when you're standing on a platform and you're looking down on there." This employee was presented with a photograph of that area and asked "other than the handrail or the railing that you see, is there anything else that would allow you to discern a height variation between the left-hand side of the yellow line and the right-hand side of the yellow line?" He testified that he just knew there was an elevation difference there because he knew the service department, and the photograph "probably is not the best representation in my opinion."

The trial court rendered its findings of fact and conclusions of law on the record at the oral argument on defendant's motion. First, it found that the step was not "in unreasonably dangerous condition," but rather was "in ordinary condition" with no indication of any type of disrepair. The trial court also found that defendant had taken the precaution of painting the step yellow, and that the area was well lit. Also, the trial court ruled that, although the step may pose a risk, it was not an unreasonable risk. Finally, it faulted plaintiff for failing to conduct a sufficient inspection of the area where she fell.

Contrary to the trial court's implication, plaintiff did not need to establish that the step was in disrepair. In its brief on appeal, defendant follows the trial court's findings on that matter and emphasizes that nothing about the step was defective. But a "defective physical structure" or "negligent maintenance" are not the only theories on which premises-liability claims have traditionally relied. *Bertrand*, 449 Mich at 610. Here, plaintiff relies on a different theory, i.e., failure to warn, so plaintiff need not establish that the step was defective or in disrepair. See *id*.

The trial court's ruling that the step at issue was not "in unreasonably dangerous condition" reveals a misunderstanding of the law. That language echoes the now-overruled opinion of *Lugo*

---

is a question of law. What a defendant needs to do to meet the general standard of care is a question for the finder of fact. *Blackwell*, 327 Mich App at 358.

[2] On appeal, defendant characterizes plaintiff's testimony about what defendant's employees told her as inadmissible hearsay. But defendant neither challenged the admissibility of that testimony in the trial court nor filed a cross-appeal challenging the admissibility of that evidence. Furthermore, while the testimony supports this Court's conclusion that genuine issues of material fact exist, it is not necessary to that conclusion.

*v Ameritech Corp, Inc*, 464 Mich 512, 517; 629 NW2d 384 (2001), overruled by *Kandil-Elsayed*, 512 Mich at 136, 153. In *Lugo*, our Supreme Court identified the general rule that a land possessor was not required to protect an invitee from open and obvious dangers, unless "special aspects of a condition make even an open and obvious risk unreasonably dangerous." *Lugo*, 464 Mich at 517. The Supreme Court in *Kandil-Elsayed* eschewed the special-aspects doctrine and replaced it with a consideration of "whether, despite its open and obvious nature, the land possessor should have anticipated harm to the invitee." *Kandil-Elsayed*, 512 Mich at 148. Consequently, the trial court committed an error of law by operating under the assumption that plaintiff had to establish that the condition was "unreasonably dangerous." Instead, to the extent that the condition was open and obvious, the relevant inquiry was whether defendant "should have anticipated harm to the invitee" despite the open and obvious nature of the condition. *Id*.

Whether the condition was "unreasonably dangerous" is no longer a relevant consideration, but plaintiff must still establish that there was a "dangerous condition." *Id.* at 112. The existence of a "dangerous condition" on the land is a threshold question. *Prebenda v Tartaglia*, 245 Mich App 168, 170; 627 NW2d 610 (2001). Prior cases have indicated that a non-visible step could be considered a dangerous condition. See *Blackwell*, 327 Mich App at 357. See also *Bertrand*, 449 Mich at 614 (holding that a step posed a danger of tripping and falling, but that this danger was open and obvious). Here, a question of fact exists as to whether the step constituted a dangerous condition.

In addition, despite the potentially dangerous condition posed by the step, defendant cannot be held liable if it exercised "reasonable care to protect invitees from an unreasonable risk of harm" caused by the step. *Kandil-Elsayed*, 512 Mich at 143. The trial court found that defendant took precautions by painting the step yellow and that the room was well lit. It held that the step might have posed a slight risk, but it was not an unreasonable risk. Thus, evidence supported defendant's argument that it had exercised reasonable care, and it is undisputed that the room was well lit and that the edge of the step was painted yellow.

Although those actions establish that defendant made some attempt to protect invitees, such an attempt is not necessarily sufficient to provide the requisite level of protection. In fact, there is evidence to suggest that those actions were insufficient. Plaintiff testified that she saw the yellow line, but interpreted it as providing a "traffic guide," not as indicating that there was a drop-off. Relatedly, plaintiff's expert observed that a yellow line is primarily used to mark an aisleway or traffic lane, and there is no dispute that cars were driven on the service-area side of the yellow line. Moreover, there was evidence that plaintiff was not the first person to fall in that area. The photograph submitted by plaintiff, although perhaps an imperfect representation of how that area looked in person, also lent support to plaintiff's argument that the floor appeared to be the same level on both sides of the yellow line. On this record, there are genuine issues of material fact regarding: (1) the visibility, or lack thereof, of the change in floor level; and (2) whether defendant exercised reasonable care to protect invitees from an unreasonable risk of harm.

Included in the analysis of whether defendant breached a duty is whether the condition was open and obvious. The consideration of defendant's precautions and the analysis of the open and obvious nature of the condition go hand-in-hand, as the precautions were aimed at increasing the visibility of the step. The consideration of whether defendant's actions constituted reasonable care requires an analysis of whether defendant made the step sufficiently open and obvious. Because

there exists a genuine issue of material fact whether defendant exercised reasonable care to protect invitees from an unreasonable risk of harm, there is a genuine issue of material fact as to whether the danger was open and obvious. Moreover, evidence that other people had fallen on the step can support plaintiff's claim that defendant should have anticipated harm to its invitees, which further establishes that remaining questions of fact render summary disposition inappropriate.

The trial court distinguished the cases cited by plaintiff because, here, defendant made an effort "to highlight that something was different there." Plaintiff relied on *Blackwell v Franchi*, 318 Mich App 573; 899 NW2d 415 (2017), remanded on other grounds 502 Mich 918 (2018), and *Hilton v Barrington Group*, unpublished per curiam opinion, issued November 17, 2009, (Docket No. 282312). To be sure, there were aspects of the steps in those cases that are not present in this case. In *Hilton*, the color of the step and the surrounding area were uniformly gray. *Hilton*, unpub op at 3. In *Blackwell*, the area was poorly lit. *Blackwell*, 318 Mich App at 577. In *Blackwell*, this Court commented that, "[a]s a general rule, a drop-off, like a step, does not in and of itself create a risk of harm because if the drop-off is seen, a reasonable person can readily navigate it without incident." *Id*. at 575-576.

Here, plaintiff's claim presents a different set of circumstances, i.e., a well-lit room and a yellow line. But whether a step is visible cannot be determined solely by the lighting conditions; a step's visibility turns on several factors. In *Blackwell* and *Hilton*, there was an issue of fact about the visibility of the step. Despite the different circumstances, the instant case also raises questions of fact on that issue. Whether the room was well lit and there was a yellow line is not dispositive. On this record, there exists a genuine issue of material fact whether the step was open and obvious, i.e., whether it was "reasonable to expect that an average person with ordinary intelligence would have discovered it upon casual inspection." *Kandil-Elsayed*, 512 Mich at 150.

Finally, the trial court faulted plaintiff for failing to satisfy her duty to inspect the area. Our Supreme Court has explained that the open and obvious danger doctrine permits the jury to conduct a comparative analysis of each party's fault, *id*. at 147, and plaintiff's negligence could certainly be weighed in that analysis of comparative fault. As we have explained, the record reveals genuine issues of material fact about the visibility of the step and whether the yellow paint amounted to the exercise of reasonable care to protect plaintiff from an unreasonable risk of harm. Thus, there also remain genuine issues of fact as to whether plaintiff's own negligence precluded her claim under the open and obvious danger doctrine or under comparative fault. Therefore, awarding summary disposition to either party in this case would not be appropriate. Accordingly, we reverse the trial court's summary disposition award under MCR 2.116(C)(10) to defendant on plaintiff's premises-liability claim and remand the case for further proceedings.[3]

---

[3] Although plaintiff insists that she can prevail on a general negligence claim because defendant's employee directed her to the customer waiting room without warning her about the step, she has not demonstrated that her claim is based on anything beyond the theory that a premises possessor failed to warn an invitee about a dangerous condition on the premises; as such, the claim sounds in premises liability, not general negligence. See *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 8; 890 NW2d 344 (2016).

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Philip P. Mariani